IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STEVEN C. HAYES, ADC # 657050,**
On behalf of himself and all others
similarly situated                                                                        **PLAINTIFF**

v.                     Case No.: 4:21-cv-00347-LPR

**SOLOMON GRAVES,** in his official capacity as
Secretary of the Department of Corrections; and
**DEXTER PAYNE,** in his official capacity as
Director of the Arkansas Division of Correction                   **DEFENDANTS**

### THIRD AMENDED COMPLAINT
### FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Steven C. Hayes ("Mr. Hayes"), on behalf of himself and all others similarly situated, for his Third Amended Complaint against Defendants Solomon Graves ("Secretary Graves"), Cabinet Secretary for the Arkansas Department of Corrections; and Dexter Payne ("Director Payne"), Director of the Arkansas Department of Corrections (collectively the "ADC Defendants"), states:

### INTRODUCTION

1. Arkansas' Act 1110 of 2021 ("Act 1110") requires the Arkansas Department of Corrections ("ADC") to withhold "federal relief or stimulus funds" from Arkansas inmates and mandates that the funds be redirected to public use. The ADC Defendants interpret Act 1110 to include within the definition of "federal relief or stimulus funds" any advance refunds of a tax credit made to Arkansas inmates under the American Rescue Plan Act, 26 U.S.C. § 6428B; as well as similar advance refunds made under the Coronavirus Aid, Relief, and Economic Security Act, 26 U.S.C. § 6428; and the Consolidated Appropriations Act of 2021, 26 U.S.C. § 6428A.

2. Mr. Hayes, an inmate at the Ouachita River Unit of the ADC, is entitled to receive an advance refund under the American Rescue Plan Act, but the Defendants—as they are required to do under Act 1110—are prohibiting him from receiving those funds.  Furthermore, the ADC Defendants admit that they are withholding from all inmates all advance refunds made pursuant to the American Rescue Plan Act; Coronavirus Aid, Relief, and Economic Security Act; or the Consolidated Appropriations Act of 2021 that were received on or after May 10, 2021 (Dkt. No. 16-1, ¶ 9).

3. Mr. Hayes brings this action on behalf of himself and all other similarly situated persons to challenge enforcement of Act 1110, which violates federal law and the Constitution of the United States of America.  Mr. Hayes seeks declaratory and injunctive relief, as well as attorneys' fees and costs.

## **PARTIES**

4. Mr. Hayes is an Arkansas resident and inmate at the Ouachita River Unit of the ADC.

5. Secretary Graves is the Cabinet Secretary of the ADC.  Under Arkansas law, Secretary Graves is responsible for performing or delegating the statutory duties of the ADC. Ark. Code Ann. § 25-43-403.  He is sued only in his official capacity.

6. Director Payne is the Director of the Division of Correction.  Under Arkansas law, Director Payne is responsible for "administer[ing] the Division of Correction and supervis[ing] the administration of all institutions, facilities, and services under the jurisdiction of the Division of Correction." Ark. Code Ann. § 12-27-107(d)(1).  He is sued only in his official capacity.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action is brought under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the ADC Defendants work and reside in the Eastern District of Arkansas.

**FACTUAL ALLEGATIONS**

9. The COVID-19 pandemic, beginning in the spring of 2020, presented and continues to present unprecedented challenges for this nation, its small businesses, and its citizens. Of those challenges, a primary concern for the federal government has been the adverse economic impacts resulting from a dramatic uptick in unemployment. That uptick caused a related downturn in consumer spending, for which Congress sought a solution.

*Federal Economic Impact Laws*

10. In response to the adverse economic impacts of the COVID-19 pandemic, Congress enacted three related economic impact laws (the "EILs"). *See* 26 U.S.C. §§ 6428 (Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116–136, sec. 2201(d)); 6428A (Consolidated Appropriations Act, 2021, Pub. L. No. 116–260, div. N. sec. 272(d)(1)); 6428B (American Rescue Plan Act of 2021, Pub. L. No. 117-2, sec. 9601(c)(2)).

11. The EILs contained a number of policy changes that attempted to respond to the problems created by the COVID-19 pandemic. The American Rescue Plan Act of 2021 (the "ARPA"), for example, provided $1.9 trillion in mandatory funding, program changes, and tax policies aimed at mitigating the continuing effects of the pandemic.

12. One such policy change included in each EIL was the creation of a new, fully refundable tax credit for eligible individuals that the federal government would advance to

individual taxpayers as rapidly as possible ("advance tax credit payments"). Stated differently, under the EILs, the federal government sends direct payments to each eligible individual, who can use their advance refund however he or she sees fit.

13. None of the EILs (or their related enforcement provisions) refer to the advance tax credit payments as "federal relief" or "stimulus funds."

14. All three EILs define an "eligible individual" as any person in the United States who is not a "nonresident alien individual," an "individual who is dependent on another taxpayer for a taxable year beginning in the calendar year in which the individual's taxable year begins," or "an estate or trust." 26 U.S.C. §§ 6428(d), 6428A(d), 6428B(c).

15. An individual is not excluded from being eligible to receive advance tax credit payments under any of the EILs based on the fact that he or she is incarcerated. In fact, the United States Senate rejected an amendment to the ARPA that would have disallowed prisoners from receiving advance tax credit payments. *See* "American Rescue Plan Act of 2021: Roll Vote No. 103." Congressional Record (March 5. 2021) p. S1257 (rejecting Amendment 1162 on a vote of 49-50).

16. Separate and apart from the individual advance tax credit payments, the APRA included policies aimed to provide state and local governments with federal assistance so that they could "continue providing essential services to the American public." 167 Cong. Rec. E245 (extension of remarks March 12, 2021) (statement of Hon. John Garamendi). Congress included approximately $362 billion in direct payments to state and local governments as part of the statutory scheme to provide localized fiscal recovery funds. *Id*.; *see also*, National Association of Counties, *American Rescue Plan Act Funding Breakdown*, (Apr. 12, 2021), https://www.naco.org/resources/featured/american-rescue-plan-act-funding-breakdown.

17. Section 9901 of the ARPA amended Title VI of the Social Security Act to add section 802, which establishes the Coronavirus State Fiscal Recovery Fund, and section 803, which establishes the Coronavirus Local Fiscal Recovery Fund. *See* 42 U.S.C. §§ 802, 803.

18. In all, according to the interim final rule issued by the U.S. Department of the Treasury on Monday, May 17, 2021, state and local governments in Arkansas will receive nearly $2.6 billion in state and local recovery funds as part of the ARPA. *See* Coronavirus State and Local Fiscal Recovery Funds, 86 Fed. Reg. 26786–26824 (proposed May 17, 2021) (to be codified at 31 C.F.R. pt. 35); *see also* Jennifer Wessel, ACHI, *Arkansas to Receive $2.6 Billion in State, Local Recovery Funds Under American Rescue Plan* (May 18, 2021), https://achi.net/newsroom/arkansas-to-receive-2-6-billion-in-state-local-recovery-funds-under-american-rescue-plan/.

19. The interim final rule implementing sections 802 and 803 of Title VI of the Social Security Act makes clear that any use of state and local recovery funds should be tailored to achieve the goals of the ARPA by an assessment of "the connection between the negative economic harm and the COVID-19 health emergency, the nature and extent of that harm, and how the use of [state and local recovery funds] would address such harm." 86 Fed. Reg. at 26788.

20. The interim final rule instructs that a portion of the $2.6 billion allocated to the state of Arkansas should be used to offset any increased costs associated with the COVID-19 pandemic resulting from public health measures taken by the state in "congregate living settings, dense worksites, [and] incarceration settings." 86 Fed. Reg. at 26786, 26789.

21. Accordingly, the individual advance tax credit payments—which are made to eligible individuals—and the localized recovery fund provisions—which are made to state and

local governments—are distinct and aim to address the comprehensive adverse economic impacts of the COVID-19 pandemic in different ways.

22. The individual advance tax credit payment provisions of the ARPA are for encouraging consumers to spend their money locally as a mechanism to support local businesses and therefore stimulate the national economy.

23. Speaking on the purpose of the individual advance tax credit payments of the ARPA, Senator Ron Wyden of Oregon stated, "[w]e passed the rescue plan to put money in people's pockets so they can pay bills and buy groceries and spend money in local businesses. . . . That is why we passed these checks, to support families, to support local economies, not to line the pockets of predatory private debt collectors." 167 Cong. Rec. S1631 (daily ed. March 18, 2021) (statement of Sen. Ron Wyden).

24. The localized recovery fund provisions of the ARPA are for offsetting the states' increased costs related to the COVID-19 pandemic, including increased costs associated with implementing public health measures in state and local prison settings.

25. Congress did not intend any of the provisions of the ARPA to supplement Arkansas' general revenue streams for uses unrelated to the effects of the COVID-19 pandemic. Indeed, the interim final rule implementing the statutory scheme to provide localized recovery funds to the state of Arkansas and its municipalities expressly prohibits governmental expenditures unrelated to the effects of the COVID-19 pandemic.

*Arkansas Act 1110*

26. On April 26, 2021, the Arkansas legislature passed Act 1110 of 2021 (the "Act"), which mandates that the ADC seize any "federal relief or stimulus funds" from individuals in its custody. *See* **Act 1110, a copy of which is attached and incorporated as Exhibit 1**.

27. The Act went into effect on May 3, 2021.

28. Under the Act, if the ADC is made aware that an incarcerated recipient of "federal relief or stimulus funds" owes court fines, fees, costs, or restitution, the ADC *shall* seize the funds and forward the amount owed to the appropriate circuit clerk or city treasurer in the county or municipality where the costs are owed.

29. But even if the ADC is not aware of any such costs owed by the individual, or if the amount of "federal relief or stimulus funds" exceeds the amount of any known costs, the ADC is prohibited from providing the funds to the individual. Rather, the ADC must distribute the money to the common Inmate Welfare Fund as well as the Division of Correction Inmate Care and Custody Fund Account, the *general revenue account for the ADC*.

30. An inmate's payment of existing court fines, fees, costs, or restitution bears no relation to the COVID-19 pandemic. Payments made by inmates to the circuit court or city treasurer in the county or municipality where costs are owed will not in any way be used to combat the adverse economic impacts of the COVID-19 pandemic.

31. Payments made to supplement the ADC's Inmate Welfare Fund bear no relation to the COVID-19 pandemic. Payments made by inmates to the ADC's Inmate Welfare Fund will not in any way be used to combat the adverse economic impacts of the COVID-19 pandemic.

32. Even if the ADC Defendants, in retrospect, seek to use payments made by inmates to the ADC's Inmate Welfare Fund for purposes related to the economic impacts of the COVID-19 pandemic, Congress has already allocated funds to the state of Arkansas for that purpose under the EILs.

33. Payments made to supplement the ADC's Inmate Care and Custody Fund Account bear no relation to the COVID-19 pandemic. Payments made by inmates to the ADC's Inmate

Care and Custody Fund Account will not in any way be used to combat the adverse economic impacts of the COVID-19 pandemic.

34. Even if the ADC Defendants, in retrospect, seek to use payments made by inmates to the ADC's Inmate Care and Custody Fund Account for purposes related to the economic impacts of the COVID-19 pandemic, Congress has already allocated funds to the state of Arkansas for that purpose under the EILs.

35. Mr. Hayes filed both a 2019 and a 2020 federal tax return, meaning he is automatically owed an advance tax credit payment of $1,400 under the ARPA.

36. Act 1110, however, mandates that the ADC Defendants seize Mr. Hayes' $1,400 advance tax credit payment, and that money has not been deposited into Mr. Hayes' inmate account.

37. Indeed, the ADC Defendants admit that they are seizing all advance tax credit payments received by inmates on or after May 10, 2021 (Dkt. No. 16-1, ¶ 9). Mr. Hayes did not receive his $1,400 advance tax credit payment before May 10, 2021.

38. Mr. Hayes does not owe any court fines, fees, costs, or restitution to any court or municipality in the state of Arkansas. Mr. Hayes owes a filing fee for bringing this action as well as another action in the United States District Court for the Western District of Arkansas. Even assuming that these filing fees qualify as "fees" under Act 1110, they total less than $1,400.

39. Approximately 14,000 other inmates housed by the ADC also are owed or have received $1,400 advance tax credit payments under the ARPA.

40. Some of the roughly 14,000 inmates who are owed advance tax credit payments under the ARPA also do not owe any court fines, fees, costs, or restitution to any court or municipality in the state of Arkansas.

41. Some of the roughly 14,000 inmates who were owed advance tax credit payments under the ARPA have already received their payment under the ARPA. The ADC Defendants have seized and sequestered any funds received by those inmates and thereby denied those inmates the ability to spend the funds. The ADC Defendants' actions thwart the purposes of the ARPA.

42. When Mr. Hayes or any other inmate currently incarcerated in an ADC-operated facility in the state of Arkansas receive their advance tax credit payment under the ARPA, the ADC Defendants have no discretion but must enforce the Act, seize the funds from the inmate, and distribute the funds as required by Arkansas law.

## CLASS DEFINITION

43. Mr. Hayes brings this action individually and on behalf of others similarly situated.

44. The class is defined as follows:

All eligible individuals incarcerated on or after May 3, 2021, in any ADC-operated facility in the state of Arkansas who by reason of filing a federal tax return for the years 2019 and 2020, or for any other reason, including submitting an online application through the Internal Revenue Service's website, are entitled to a federal tax credit pursuant to the American Rescue Plan Act, 26 U.S.C. § 6428B, and have either (1) received a tax credit by way of an advance refund from the federal government or (2) will receive a tax credit by way of an advance refund from the federal government which has been made subject to confiscation and distribution to any court, county, or municipality, or to any public use whatsoever, by the ADC pursuant to the ADC's interpretation of Arkansas' Act 1110 of 2021 that includes such tax credits by way of advance refund within the definition of "federal relief or stimulus funds."

The class excludes: (a) the United States and (b) the Defendants and their respective affiliates, employees, officers, and directors.

## CLASS ALLEGATIONS

45. The ADC Defendants have acted or plan to act on grounds that generally apply to all class members and injunctive or declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2).

9

46. The membership of the class is so numerous that joinder is impracticable.

47. There are questions of law and fact common to the claims of all class members.

48. Mr. Hayes claims are typical of the claims of all class members.

49. Mr. Hayes will fairly and adequately protect the interests of all class members, and he is represented by counsel who are experienced in prosecuting claims against officers of the state of Arkansas.

50. The questions of law or fact common to the members of the class predominate over any individual question which may exist.

51. A class action is superior to other available methods for the fair and efficient adjudication of the class members' claims against the Defendants.

### COUNT I – OBSTACLE PREEMPTION
### 28 U.S.C. § 2201 – SUPREMACY CLAUSE VIOLATION

52. Mr. Hayes incorporates paragraphs 1–51 as fully stated herein.

53. "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

54. The ARPA provides that all eligible individuals are entitled to receive a $1,400 tax credit in the form of an advance refund for the purpose of reversing the adverse effects of the COVID-19 pandemic through spending. *See* 26 U.S.C. 6428B.

55. The Supremacy Clause of the United States Constitution, Article VI, clause 2, provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2.

56. A state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (citations and quotation marks omitted); *see also S.D. Min. Ass'n, Inc. v. Lawrence Cty.*, 155 F.3d 1005, 1009 (8th Cir. 1998) (quoting *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987)).

57. Determining whether obstacle preemption applies "is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects . . . ." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

58. The Act stands as an obstacle to the accomplishment of the full purposes and objectives of the ARPA because Congress intended to combat the adverse economic impacts of the COVID-19 pandemic by allowing eligible individuals to use tax credits in the form of advance rebates to inject money into their local economies.

59. Congress made appropriations to the state of Arkansas under a separate provision of the ARPA for the purpose of offsetting any increased costs associated with implementing public health measures in state and local prison settings in response to the COVID-19 pandemic.

60. Any use of funds allocated to eligible individuals or to the state of Arkansas pursuant to the ARPA must be used to address the adverse economic impacts of the COVID-19 pandemic. Any other use is against the stated purpose of the ARPA.

61. The ADC Defendants do not intend to use any of the funds that they have earmarked for confiscation from ADC inmates to address the adverse economic impacts of the COVID-19 pandemic, but instead intend to use those funds to supplement the ADC's operating budget.

62. The Act intercepts and redirects to public use millions of dollars that would otherwise be used to accomplish the full purposes and objectives of Congress under the ARPA.

63. Mr. Hayes and all class members have been and continue to be injured by the actions of the ADC Defendants

64. Mr. Hayes and all class members seek a declaration that the Act is preempted by the ARPA.

65. Mr. Hayes and all class members seek a permanent injunction against the ADC Defendants' enforcement of the Act to seize advance tax credit payments made pursuant to the ARPA.

### COUNT II – VOID FOR VAGUENESS
### 42 U.S.C. § 1983 – U.S. CONST. AMEND. XIV

66. Mr. Hayes incorporates paragraphs 1–65 as fully stated herein.

67. The Act is unconstitutionally vague under the Due Process Clause.

68. The Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "Federal Due Process Clause") provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

69. The void for vagueness doctrine is embodied in the due process clause of the Fourteenth Amendment. *See D.C. and M.S. v. City of St. Louis, Mo.*, 795 F.2d 652, 653 (8th Cir. 1986).

70. Under the Due Process Clause, an enactment is void for vagueness it is "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." *Stephenson v. Davenport Comm. Sch. Dist.*, 110 F.3d 1303, 1308 (8th Cir. 1997) (citation and quotation marks omitted).

71. The Act requires the ADC Defendants to confiscate and redirect to public use any "federal relief or stimulus funds" from any inmate to whom those funds are owed.

72. "Federal relief or stimulus funds" is an imprecise term that is susceptible to more than one reasonable interpretation.

73. Tax credits in the form of advance payments to eligible individuals pursuant to the ARPA are not "federal relief or stimulus funds" and do not come within the reach of the Act.

74. Even so, the ADC Defendants are withholding payments made to ADC inmates pursuant to the EILs as "federal relief or stimulus funds."

75. The term "federal relief or stimulus funds" does not appear anywhere in the United States Code.

76. The term "federal relief funds" does not appear anywhere in the United States Code.

77. The term "federal stimulus funds" does not appear anywhere in the United States Code.

78. The Act allows the ADC Defendants to enforce its provisions arbitrarily and capriciously and opens ADC inmates to the confiscation of payments unrelated to the objectives of the Act.

79. Mr. Hayes and all class members seek a declaratory judgment that Act 1110 is void as being unconstitutionally vague.

### COUNT III – VIOLATION OF PROCEDURAL DUE PROCESS
### 42 U.S.C. § 1983 – U.S. CONST. AMEND. XIV

80. Mr. Hayes incorporates paragraphs 1–79 as fully stated herein.

81. The Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "Federal Due Process Clause") provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

82. "The human right to own property is a most fundamental right . . . ." *Midwest Video Corp. v. F.C.C.*, 571 F.2d 1025, 1058 (8th Cir. 1978).

83.     "Inmates have a property interest in money received from outside sources." *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996).

84.     Mr. Hayes and all class members have a constitutionally protected property interest in the money to which they are entitled under the ARPA.

85.     The ADC Defendants, though the enforcement of the Act, have threatened to deprive or have deprived Mr. Hayes and all class members of their property rights without due process of law by failing to give Mr. Hayes and all class members notice and an opportunity to be heard prior to the deprivation.

86.     The ADC Defendants, through the enforcement of the Act, have threatened to deprive or have deprived Mr. Hayes and all class members of their property rights without due process of law by failing to provide a mechanism for Mr. Hayes and all class members to contest the deprivations of their property once they occurred.

87.     Mr. Hayes and all class members have been and continue to be irreparably injured by the actions of the ADC Defendants.

88.     Mr. Hayes and all class members seek a permanent injunction against the ADC Defendants' enforcement of the Act to seize advance tax credit payments made pursuant to the ARPA.

### COUNT IV – VIOLATION OF SUBSTANTIVE DUE PROCESS
### 42 U.S.C. § 1983 – U.S. CONST. AMEND. IV

89.     Mr. Hayes incorporates paragraphs 1–88 as fully stated herein.

90.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "Federal Due Process Clause") provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

91. "Substantive due process prevents the government from interfering with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987); *see also Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (finding a substantive due process claim may be pursued by an inmate "deprived of life, liberty, or property by government action").

92. "'The human right to own property is a most fundamental right . . . ." *Midwest Video Corp. v. F.C.C.*, 571 F.2d 1025, 1058 (8th Cir. 1978).

93. "Inmates have a property interest in money received from outside sources." *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996).

94. The ADC Defendants, through the enforcement of the Act, have arbitrarily and capriciously threatened to deprive or have arbitrarily and capriciously deprived Mr. Hayes and all class members of their property rights.

95. The ADC Defendants, through the enforcement of the Act, have threatened to deprive or have deprived Mr. Hayes and all class members of their property rights even though the Act has no rational relationship to any public purpose.

96. Mr. Hayes and all class members have been and continue to be injured by the actions of the ADC Defendants.

97. Mr. Hayes and all class members seek a permanent injunction against the ADC Defendants' enforcement of the Act to seize advance tax credit payments made pursuant to the ARPA.

## COUNT V – UNCONSTITUTIONAL TAKINGS
## 42 U.S.C. § 1983 – U.S. CONST. AMEND. V

98. Mr. Hayes incorporates paragraphs 1–97 as fully stated herein.

99. Mr. Hayes's and all class members' advance tax credit payment is personal property subject to constitutional protections. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S.

595, 616 (2013) (explaining that courts "treat[] confiscations of money as takings despite their functional similarity to a tax").

100. The ADC Defendants deprived Mr. Hayes and all class members of their payments when the ADC Defendants deposited Mr. Hayes's and the class members' payments into accounts for the ADC's general operating expenses and for benefits to the entire inmate population.

101. Mr. Hayes and all class members were not justly compensated.

102. Mr. Hayes and all class members have been and continue to be injured by the actions of the ADC Defendants.

103. Mr. Hayes and all class members seek a permanent injunction against the ADC Defendants' enforcement of the Act to seize advance tax credit payments made pursuant to the ARPA.

WHEREFORE, Mr. Hayes and all class members respectfully pray that this Court:

a. Declare, pursuant to 28 U.S.C. § 2201, that Act 1110 of 2021 is preempted by the American Rescue Plan Act;

b. Enjoin the ADC Defendants from enforcing Act 1110 of 2021 because it is preempted by the American Rescue Plan Act and because it violates federal law and the Constitution of the United States;

c. Award to Mr. Hayes and all class members their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 or any other applicable statute or authority; and

d. Grant Mr. Hayes and all class members all other proper relief to which they are entitled.

                John E. Tull III (Ark. Bar No. 84150)
                *Attorney for Steven C. Hayes*

                QUATTLEBAUM, GROOMS & TULL PLLC
                111 Center Street, Suite 1900
                Little Rock, AR 72201
                Voice: (501) 379-1700
                Facsimile: (501) 379-1701
                jtull@qgtlaw.com