IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **STEVEN C. HAYES, ADC # 657050,** | **PLAINTIFF** |
| v.   No.: 4:21-CV-00347-LPR | |
| **SOLOMON GRAVES,** IN HIS OFFICIAL CAPACITY AS **SECRETARY OF THE DEPARTMENT OF CORRECTIONS;** AND **DEXTER PAYNE,** IN HIS OFFICIAL CAPACITY AS **DIRECTOR OF THE ARKANSAS DIVISION OF CORRECTION** | **DEFENDANTS** |

\* \* \*

| | |
|---|---|
| **ANTHONY LAMAR, ADC # 120479,** | **PLAINTIFF** |
| v.   No.: 4:21-cv-00529-LPR | |
| **ASA HUTCHINSON,** ET AL. | **DEFENDANTS** |

\* \* \*

| | |
|---|---|
| **WINSTON HOLLOWAY, ADC # 67507** | **PLAINTIFF** |
| v.   No.: 4:21-cv-00495-LPR | |
| **ARKANSAS GENERAL ASSEMBLY,** ET AL. | **DEFENDANTS** |

### BRIEF IN SUPPORT OF PETITION FOR ATTORNEY'S FEES AND COSTS

Plaintiffs Steven C. Hayes ("Hayes"), Anthony Lamar ('Lamar"), and Winston Holloway ("Holloway") (collectively "Plaintiffs"), the prevailing parties in this action, seek to recover attorney's fees and costs incurred in connection with this action. For the following reasons, Plaintiffs respectfully request that this Court award reasonable attorney's fees of no less than $71,853.05 and costs of no less than $1,124.30.

### BACKGROUND

Hayes, Lamar, and Holloway are prisoners housed by the Arkansas Department of Corrections. They each sued the Defendants, challenging the enforceability of Arkansas Act 1110

1

of 2021 ("Act 1110"). Act 1110 permitted the defendants to seize state prisoners' federal rebates solely because they were inmates being housed by the Arkansas Department of Corrections. Act 1110 provided prisoners with no recourse, process, or compensation for the government taking their property. On May 13, 2021, John E. Tull III was first appointed to represent Hayes, and he did so with the assistance of E.B. Chiles IV, Christoph Keller, Noah P. Watson, E. Jonathan Mader, Laura L. O'Hara, and certain law clerks (collectively "Plaintiffs' Counsel"). (Doc. # 13).

When Plaintiffs' Counsel was assigned, Hayes had already filed a complaint and first amended complaint. (Doc. # 1, 7). On May 14, 2021, Defendants filed a motion to dismiss the first amended complaint. (Doc. # 15). On May 28, 2021, Plaintiffs' Counsel sought and obtained leave to file a second amended complaint in response to the pending motion to dismiss. (Doc. # 19). On July 1, 2021, Plaintiffs' Counsel was granted leave to file a second amended complaint and did so. (Doc. # 27). On August 5, 2021, Defendants once again filed a motion to dismiss. (Doc. # 33). Plaintiffs' Counsel opposed that motion on August 19, 2021, and prevailed. (Doc. # 35). On October 12, 2021, Plaintiffs' Counsel moved for leave to file a third amended complaint for the purpose of adding a Takings claim. (Doc. # 124). Once again, the Court granted leave, and Plaintiffs' Counsel filed a third amended complaint on October 28, 2021. (Doc. # 155).

Defendants filed a motion for declaratory judgment and a permanent injunction on October 26, 2021. (Doc. # 151). Plaintiffs' Counsel responded on November 8, 2021, agreeing with defendants in part but seeking additional protections. (Doc. # 186). Defendants moved to dismiss Hayes' third amended complaint on November 15, 2021, and Plaintiffs' Counsel opposed on November 29, 2021. (Doc. # 197, 234). Simultaneously, Plaintiffs' Counsel was preparing a motion for class certification that would allow Hayes to represent the interests of all similarly situated prisoners. (Doc. # 126). However, on December 1, 2021, the Court instead consolidated Hayes' case with Anthony Lamar's and Winston Holloway's cases and designated the cases as

"appropriate and representative test cases." (Doc. # 254). The Court appointed Tull as counsel for Anthony Lamar and Winston Holloway as well. (Doc. # 253).

Plaintiffs' Counsel filed a motion for summary judgment on December 31, 2021. (Doc. # 330). After defendants' response and Plaintiffs' Counsel's reply, a hearing was scheduled for March 4, 2022. (Doc. # 411). On March 16, 2022, the Court granted in part Plaintiffs' motion for summary judgment and issued a permanent injunction ordering defendants to "return confiscated federal relief or stimulus funds currently held in the sequestered account that are not being used to pay off a prisoner's court fines, fees, costs, or restitution." (Doc. # 422). Thus, Plaintiffs prevailed and were granted the relief sought.

## ARGUMENT

I. **THIS COURT SHOULD AWARD PLAINTIFFS A MINIMUM OF $71,853.05 FOR THEIR ATTORNEY'S FEES.**

   A. **As The Prevailing Party, Plaintiffs Are Entitled To Their Attorney's Fees Under 42 U.S.C. § 1988.**

In an action to enforce a provision of 42 U.S.C. § 1983, this Court may award attorney's fees to the "prevailing party." 42 U.S.C. § 1988(b). Congress enacted Section 1988 so that "persons with civil rights grievances" may have "effective access to the judicial process." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citations and internal quotations omitted). Thus, prevailing plaintiffs should be awarded attorney's fees unless "special circumstances" make doing so unjust. *Id.* This "special circumstances" exception, however, is to be construed narrowly and requires a "strong showing" that an award would be unjust. *Hatfield v. Hayes*, 877 F.2d 717, 720 (8th Cir. 1989). There are no such special circumstances in this case.

In order for a plaintiff to be considered a "prevailing party," the plaintiff must identify "a resolution to the dispute which changes the legal relationship between [himself] and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989).

3

Plaintiffs need not be awarded money damages to be the "prevailing party"; a permanent injunction is sufficient. *See Lefemine v. Wideman*, 568 U.S. 1, 4–5 (2012) (holding that plaintiff was the prevailing party where the District Court entered a permanent injunction benefitting plaintiff without awarding money damages); *see also Planned Parenthood Great Plains v. Williams*, 863 F.3d 1008, 1011 (8th Cir. 2017) (finding plaintiff was the prevailing party where it obtained both a preliminary and permanent injunction preventing the defendant from revoking its license).

Plaintiffs are the prevailing parties. On March 16, 2022, this Court entered a permanent injunction ordering the Defendants to "return all confiscated federal relief or stimulus funds currently held in the sequestered account that are not being used to pay off a prisoner's court fines, costs, or restitution." (Doc. # 422). Plaintiffs obtained a permanent injunction that required the defendants to recognize Plaintiffs' constitutional rights and act in accordance with them. *See Williams,* 863 F.3d at 1011. Plaintiffs are the prevailing parties under Section 1988 and should be awarded their attorney's fees in the amount requested.

**B.     Plaintiffs' Fee Request Complies with the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") limits the extent to which a prisoner plaintiff may recover attorney's fees under Section 1988. 42 U.S.C. § 1997e(d). Prisoner plaintiffs may only recover fees that are "directly and reasonably incurred in proving an actual violation" of a plaintiff's Section 1983 rights. § 1997e(d)(1)(A). Recoverable attorney's fees must also be "proportionally related to the court ordered relief for the violation." § 1997e(d)(1)(B). Where monetary damages are awarded, plaintiff's recovery of attorney's fees is capped at one hundred and fifty percent of the damages award. § 1997e(d)(2). However, that cap does not apply where non-monetary relief, such as an injunction, is awarded., The PLRA also states that a prisoner plaintiff may not recover attorney's fees under Section 1988 that are based on an hourly rate "greater than 150 percent of the hourly rate established under Section 3006(A) of Title 18 for

4

payment of court-appointed counsel." § 1997e(d)(3).

Section 3006(A) of Title 18 is the Criminal Justice Act. 18 U.S.C. § 3006(A). The Criminal Justice Act permits the Judicial Conference to set an hourly rate for a circuit or district court that takes into account "such factors as the minimum range of the prevailing hourly rates for qualified attorneys in the district[.]" § 3006(A)(d)(1). From January 1, 2021 through December 31, 2021, the United States District Court for the Eastern District of Arkansas set the Criminal Justice Act hourly rate for non-capital cases at $155.00. That rate increased to $158.00, effective January 1, 2022. Thus, the hourly rate for work completed in 2021 is capped at $232.50, and the hourly rate for work completed in 2022 is capped at $237.00. This is true even though a reasonable fee may "far exceed that amount." *Eoff v. Mallet,* 2021 WL 5614766, *1 (E.D. Ark. 2021).

All fees Plaintiffs seek to recover were "directly and reasonably incurred in proving an actual violation" of Plaintiffs' Section 1983 rights and are "proportionally related to the court ordered relief." 42 U.S.C. § 1997e(d)(1). *See also* Exhibit 1, John Tull Affidavit, ¶¶ 10-11. This Court found that defendants had violated Plaintiffs' rights under Section 1983 by withholding Plaintiffs' federal stipends in a sequestered account. (Doc. # 422). The attorney's fees Plaintiffs request were all incurred in the process of making arguments and presenting defenses to the Court for the purpose of securing a permanent injunction against the relevant violation. *See e.g., Cody v. Hillard,* 304 F.3d 767 (8th Cir. 2002) (presuming that fees incurred prior to the entry of a final order are "directly and reasonably incurred.").

Plaintiffs were awarded a hybrid form of relief because they obtained a permanent injunction that orders the defendants to return money to Plaintiffs. Therefore, Plaintiffs received both injunctive and monetary relief. Where there is both injunctive and monetary relief, "the attorney's fees cap in 42 U.S.C. § 1997e(d)(2) does not apply." *Foulk v. Charrier,* 262 F.3d 687, n. 17 (8th Cir. 2001). However, even if the Section 2 cap did apply, Plaintiffs' request would fall

far below the limit. The Stimulus Funds Account has $2,784,849.96 that was not applied to inmates' fines, fees, court costs, and restitution. (Doc. # 344-1). Plaintiffs could theoretically recover up to more than $4 million in attorney's fees even if the Section 2 cap applied, but request only a minimum of $71,853.05.

The attorney's fees requested also comply with 42 U.S.C. § 1997e(d)(3), which caps the recoverable hourly rate at one hundred and fifty percent of the hourly rate established under the Criminal Justice Act. Six attorneys provided professional services on behalf of Plaintiffs. *See* Exhibit 1, John Tull Affidavit, ¶ 11. Tull would typically receive $450.00[1] per hour but capped his fee at $232.50 in 2021 and $237.00 2022 in compliance with the PLRA. *See* Exhibit 1, John Tull Affidavit, ¶ 11. E.B. Chiles IV would typically receive $420.00[2] per hour but capped his fee at $232.50. Keller would typically receive $260.00[3] per hour but also capped his fee at $232.50. *See* Exhibit 1, John Tull Affidavit, ¶ 11. The remaining two attorneys, Watson and Mader, typically charge $220.00 per hour and did so in this case. *See* Exhibit 1, John Tull Affidavit, ¶ 11. O'Hara typically charges $200.00 per hour and did so in this case. Since each attorney capped his or her fee at the statutory limit or below, the Court is permitted to award Plaintiffs, at minimum, attorney's fees of $71,853.05.

The PLRA does not bar this Court from applying an enhancement or multiplier to increase

---

[1] If Tull received his usual fee of $450.00, his attorney's fees would be $19,440 rather than $10,084.05

[2] If Chiles received his usual fee of $420.00, his attorney's fees would be $504.00 rather than $279.00.

[3] If Keller received his usual fee of $260.00, his attorney's fees would be $14,872.00 rather than $13,299.00.

Plaintiffs' attorney's fees recovery. *See Skinner v. Uphoff,* 324 F. Supp. 2d 1278, 1287 (D. Wyom. 2004) (disagreeing with the defendants' contention that the PRLA precludes an enhancement of attorney's fees); *Balla v. Idaho State Board of Correction,* 2016 WL 762651, *13 (D. Idaho 2016) (granting Plaintiffs an enhancement of its PLRA-capped attorney's fees); *Kelly v. Wengler,* 7 F. Supp. 3d 1069, 1083 (D. Idaho 2014) (granting a 2.0 multiplier and a 1.3 multiplier for attorney's fees and reasoning that "[t]o read the statute as setting an absolute maximum arguably eliminates the well-established enhancement framework in § 1998 litigation, a drastic step.") Where the defendants are "spared much higher attorneys' fees and costs by the excellent work of Plaintiffs' counsel", where claims are settled on summary judgment so that a costly trial is avoided, and where Plaintiffs have "vindicated the constitutional rights of a large group of people," an enhancement of the PLRA fees is appropriate. *Skinner,* 324 F. Supp. 2d at 1287. Courts have acknowledged that attorneys with great skill and experience may be reluctant to take prisoner civil rights cases due to the heavily discounted PLRA rates, limiting "effective access to the judicial process." *Id; see also Balla,* 2016 WL 6762651, *13 (finding that a multiplier was appropriate under the theory that prisoners face difficulty in finding counsel willing to take on risky civil rights claims). Thus, enhancement not more fairly compensates the attorney but also plays an important role in providing prisoners with access to high-quality representation.

As in *Skinner,* this case was settled at summary judgment rather than proceeding to a costly trial. Moreover, this case vindicated the constitutional rights of prisoners in the state of Arkansas, resulting in a return of $2,784,849.96 that the defendants unconstitutionally withheld from inmates. Plaintiffs' Counsel pursued that result with skill and experience, as well as speed and efficiency. This Court would be well within its right to enhance the fees Plaintiffs can recover in order to acknowledge the excellent results obtained and set a precedent that gives prisoners greater access to high-quality representation. *See Skinner,* 324 F. Supp. 2d at 1287; *Balla,* 2016 WL

6762651, *13.

Pursuant to the PLRA, this Court is permitted to award a minimum of $71,853.05 in attorney's fees, subject to an enhancement or multiplier at the Court's discretion.

**Plaintiffs' Requested Fee Is Reasonable Under 42 U.S.C. § 1988(b)**

To determine a reasonable attorney's fee, courts generally utilize the lodestar approach. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010). Under the lodestar approach, courts calculate the amount of a reasonable fees by multiplying "the number of hours reasonably expended on litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433–34; *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003). Plaintiffs must provide evidence of hours worked and the rate claimed, as well as evidence demonstrating that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); see also *Wheeler*, 348 F.3d at 754 ("The onus is on the party seeking the award to provide evidence of the hours worked and the rate claimed."). This method is "presumptively sufficient" to arrive at a determination of a reasonable fee. *Perdue*, 559 U.S. at 552.

As evidenced by the supporting affidavit of counsel and redacted billing summary, the fees and attorney hours in this matter are reasonable. *See* Exhibit 1, Tull Affidavit ¶ 10; Exhibit 8, Redacted Billing Summary. John E. Tull III, E.B. Chiles, IV, Christoph Keller, Noah P. Watson, E. Jonathan Mader, Laura L. O'Hara, and certain law clerks litigated this case for Plaintiffs. *See* Exhibit 1, John Tull Affidavit, ¶¶ 1-8. Their experience and qualifications are set forth in the affidavit and professional biographies accompanying Plaintiffs' motion. *See* Exhibit 1, Tull Affidavit ¶¶ 2-8; Exhibits 2-7, Professional Biographies. Their firm charged hourly fees for their services, and the applicable hourly rates are detailed in the affidavit accompanying Plaintiffs' motion. *See* Exhibit 1, Tull Affidavit ¶ 11. As the affidavit attests, these rates are reasonable,

considering each lawyer's background, experience, and expertise. As previously established, the usual hourly rates for three attorneys are significantly discounted for the purpose of complying with the PLRA and in fact fall well below what would otherwise be a reasonable rate for services. *See Eoff,* 2021 WL at *1 (stating that PLRA fee limitations can result in a below-reasonable fee). *See also* Exhibit 1, Tull Affidavit ¶ 11.

Although there is a strong presumption that the lodestar calculation represents a reasonable rate, once it has calculated the reasonable fee the court may still choose to adjust the fee upwards or downwards. *Hensley*, 461 U.S. at 434; *Blum*, 465 U.S. at 897. There is no precise method for adjusting the lodestar fee. *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 576 (8th Cir. 2014). In *Hensley*, the Supreme Court referenced twelve factors that courts may consider when determining the reasonableness of an attorney's fees, but noted that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 430 n.3, 434 n.9 (citations omitted); *see also Fires*, 565 F. App'x at 576.

Since *Hensley*, the Supreme Court has curbed the application of these factors. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (citing *Blum*, 465 U.S. at 898–900) ("[T]he 'novelty [and] complexity of the issues,' 'the special skills and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as

9

independent bases for increasing the basic fee award."). Still, these factors continue to offer guidance to lower courts. *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018); *Scroggin v. Credit Bureau of Jonesboro, Inc.*, 973 F. Supp. 2d 961, 981–82 (E.D. Ark. 2013); *Sexton v. Ellison*, No. 3:06CV00163BSM, 2009 WL 1940523, at *2 (E.D. Ark. July 2, 2009).

Here, consideration of the above factors supports awarding Plaintiffs, at minimum, the full amount calculated using the lodestar approach. Plaintiffs' Counsel has already significantly reduced its hourly rates in order to comply with the PLRA; thus, the requested attorney's fees have already been adjusted downward and should not be adjusted downward any further. Tull is highly skilled in the practice of constitutional law and was uniquely qualified to represent Plaintiffs in their claims. In order to prevail, Plaintiffs' Counsel were required to seek leave to file a second and third amended complaint, each presenting complex constitutional claims. (Doc. #19, 31). Plaintiffs' Counsel also made oral arguments for and obtained a preliminary injunction. (Doc. # 9, 73, 79). Plaintiffs' Counsel defended against multiple motions to dismiss. (Doc. # 234). Plaintiffs' Counsel also drafted, made oral arguments for, and succeeded on key aspects of their motion for summary judgment. (Doc. # 330, 359, 415, & 422). Ultimately, Plaintiffs' Counsel prevailed, securing Plaintiffs' constitutional right to their property. (Doc. # 422).

Litigation in this case was inherently complex. Numerous parties asserted an interest in the claim, and because time was of the essence, the litigation was fast paced. Plaintiffs' Counsel represented multiple prisoners to whom they did not have reliable, consistent access. There was significant labor required, complex litigation questions posed, a shortened litigation timeline provided, and a high level of skill involved. In addition, there was a natural drawback to the case because of the limit on recoverable attorney's fees. For all these reasons, the twelve factors weigh in favor of granting attorney's fees in at least the amount requested.

Because Plaintiffs are the prevailing parties, because the requested attorney's fees are reduced in compliance with the PLRA, because there is a strong presumption of reasonableness given to the lodestar calculation, and because the foregoing factors support awarding the calculated amount, Plaintiffs are entitled to a minimum of $71,853.05 in attorney's fees. Plaintiffs also ask that the Court apply an enhancement or multiplier to any awarded attorney's fees in order to make the amount Plaintiffs' recover more reasonable.

## II.     PLAINTIFFS ARE ENTITLED TO RECOVERY OF THEIR COSTS

As the prevailing party, Plaintiffs are entitled to an award of costs. 28 U.S.C. § 1920 (2018); 42 U.S.C. § 1988(b); Fed. R. Civ. P. 54(d)(1). This Court may tax six separate categories of expenses as costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920(1)-(6).

Plaintiffs have incurred costs in the following categories, which were actually and necessarily incurred. *See* Exhibit 8, Redacted Billing Summary; Exhibit 9, Hayes Itemized Costs; Exhibit 1, Tull Affidavit ¶ 11. As permitted by rule and statute, Plaintiffs are entitled to recover $1,124.30 in costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court award a minimum of $71,853.05 in attorney's fees as well as costs in the amount of $1,124.30. Plaintiffs also ask that this Court apply an enhancement or multiplier to any awarded attorney's fees.

John E. Tull III (84150)
Noah P. Watson (2020251)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone:   (501) 379-1700
Facsimile:    (501) 379-1701
jtull@qgtlaw.com
nwatson@qgtlaw.com

*Attorneys for Plaintiffs*